1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE EASTERN DISTRICT OF CALIFORNIA

8   BLA HER,

9              Plaintiff,                 No. CIV S-04-2685 GGH

10        vs.

11
    JO ANNE B. BARNHART,                  <u>ORDER</u>
12  Commissioner of
    Social Security,
13
               Defendant.
14  _____/

15             Plaintiff seeks judicial review of a final decision of the Commissioner of Social

16  Security ("Commissioner") denying her application for Supplemental Security Income ("SSI")

17  under Title XVI of the Social Security Act ("Act").  For the reasons that follow, plaintiff's

18  Motion for Summary Judgment or Remand is DENIED, the Commissioner's Cross Motion for

19  Summary Judgment is GRANTED, and the Clerk is directed to enter judgment for the

20  Commissioner.

21  <u>BACKGROUND</u>

22             Plaintiff, born February 9, 1961, applied on September 24, 2002 for disability

23  benefits.[1]  (Tr. at 58, 10.)  Plaintiff alleged she was unable to work since January 1, 1996 due to

24  \\\\\

25  _____

26      [1]  Plaintiff previously applied for benefits in 1993 and was denied in 1995.  The ALJ in
    this case found that the prior decision was final and binding.  (Tr. at 10.)

                                    1

headaches, chest pain, hemorrhoids, shortness of breath, depression, memory loss, low back pain, shoulder pain, and anemia.  (Tr. at 58, 47, 12.)

        In a decision dated June 24, 2004, ALJ F. Lamont Liggett determined plaintiff was not disabled.  The ALJ made the following findings:[2]

> 1.     The claimant has not engaged in substantial gainful activity since her alleged onset date.
>
> 2.     The medical evidence establishes that the claimant has severe signed [sic] finds that the claimant has the following medically determinable impairments: low back pain secondary to mild spondylosis, anemia, hemorrhoids and possible gastritis.  The claimant also has mild depression without psychotic symptoms, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, and Regulations No. 4.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

    Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

    Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

    Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

    Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

    Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

3.     The undersigned does not find credible either the claimant's or her husband's reports in regards to the claimant's symptoms, pain, and functional restrictions resulting.

4.     The undersigned is precluded from performing heavy skilled work but remains capable of performing medium, light and sedentary work at an unskilled level.

5.     The claimant's past relevant work as sewing machine operator did not require the performance of the work-related activities precluded by the above limitations (20 CFR § 416.965).

6.     The claimant's impairments do not prevent the claimant from performing her past relevant work.

7.     In the alternative, if the claimant is not able to return to her past work, if the claimant's nonexertional limitations did not significantly compromise her ability to perform work at all exertional levels, section 203.25, Appendix 2, Subpart P, Regulations No. 4 indicates that a finding of not disabled would be appropriate.  If her capacity to work at all levels were significantly compromised, the remaining work which she would functionally be capable of performing would be considered in combination with her age, education, and work experience to determine whether a work adjustment could be made.

8.     Considering the range of work at all exertional levels which the claimant is still functionally capable of performing, in combination with her age, education, and work experience, and using the above-cited section 203.25 as a framework for decisionmaking, the claimant is not disabled.

9.     The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(e)).

(Tr. at 20-21.)

ISSUES PRESENTED

        Plaintiff has raised the following issue:  Whether the ALJ Should Have Called A

Vocational Expert to Determine Plaintiff's Residual Functional Capacity.[3]

---

        [3]  Plaintiff lists one issue, but the text of the argument touches upon other issues.

3

1  LEGAL STANDARDS

2          The court reviews the Commissioner's decision to determine whether (1) it is

3  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

4  the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

5  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

6  Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

7  accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

8  1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

9  (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

10  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

11  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

12  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

13  Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

14  ANALYSIS

15          Whether the ALJ Should Have Used the Testimony of a Vocational Expert in

16          Determining Plaintiff's Residual Functional Capacity

17          Plaintiff contends that the ALJ should have utilized a vocational expert due to her

18  significant nonexertional limitations of depression and anxiety which cause her to lose sleep,

19  have frequent nightmares, and render her unable to handle stress.

20          In this case, the ALJ found that plaintiff had a threshold depressive disorder.  As a

21  result, he concluded that she was restricted to simple repetitive tasks.  (Tr. at 15.)  He found she

22  could do medium unskilled work, and that she could do her past work as a sewing machine

23  operator which was light work.  (Id. at 19.)  In the alternative, the ALJ found that according to

24  the grids, a finding of unskilled medium work leads to a conclusion of not disabled.  The

25  occupational base was not significantly eroded by plaintiff's need to do simple, unskilled, entry

26  level work.  (Id. at 20.)

1    Plaintiff specifically asserts that the ALJ failed to consider the records of Dr.

2  Xiao, a psychiatrist who diagnosed major depressive disorder and a GAF of 60.[4]  (Tr. at 230.)  To

3  the contrary, the ALJ summarized Dr. Xiao's findings of major depressive disorder and post

4  traumatic stress disorder ("PTSD"), dated March, 2004, and noted that plaintiff continued to have

5  hallucinations.  (Tr. at 16, 221.)  After summarizing this and other mental health records very

6  thoroughly, the ALJ chose instead to rely on the reports of Drs. Richwerger and the DDS

7  physicians.

8    Dr. Richwerger evaluated plaintiff on April 1, 2003 at the request of the

9  Department of Social Services.  After testing and review of medical records, he concluded that

10  plaintiff's low level of performance was as a result of low effort.  (Tr. at 154.)  In summarizing

11  the records, this psychologist specifically noted the following.  In a daily activities questionnaire,

12  plaintiff claimed she could not complete any chores because of hemorrhoids.  The ALJ would

13  later find that this impairment would not prevent plaintiff from being able to stand or perform

14  simple household chores or shopping as she claimed.[5]  (Tr. at 19.)  Plaintiff reported she has been

15  depressed since her 16 year old child almost died when he was 15 days old.  A Sacramento

16  County Comprehensive Assessment Plan stated she had not worked anywhere longer than two

17  weeks, but when Dr. Richwerger was looking through her paperwork, plaintiff stated she had

18  worked for one year at a job.  This plan also stated that plaintiff had failed a three-digit span task

19  and a two-digit spatial span task; however, these results were inconsistent with prior reports

20  indicating intact short term memory.  Plaintiff was able to raise eight children and appeared to

21  have good coping skills.  (Tr. at 150.)

22

23    [4]  GAF is a scale reflecting the "psychological, social, and occupational functioning on a
hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental

24  Disorders 32 (4th ed.1994) ("DSM IV").  According to the DSM IV, a GAF of 60 indicates
moderate symptoms such as flat affect, circumstantial speech, occasional panic attacks, or

25  moderate difficulty in functioning as in few friends or conflicts with peers or co-workers.

26    [5]  The ALJ also found inconsistencies among plaintiff's various reports of chores done
around the house, and between plaintiff's reports and those of other family members.  (Tr. at 19.)

1    On evaluation, although plaintiff reported nightmares, flashbacks and hearing

2    people call her name, Dr. Richwerger found that she did not appear to be suffering from a

3    psychotic process and she did not evidence response to internal stimuli or bizarre behavior.  (Id.)

4    Although plaintiff brought a large bag of pills to the exam, she did not know what medication she

5    was taking, and it was difficult to determine because many of the prescriptions were expired.  (Id.

6    at 150-51.)  The medications included Propoxy-N-APAP, Naproxen, Naprosyn, Ranitidine,

7    Celebrex samples, amitriptyline, Protonix, and Temazepam.[6]  Plaintiff's level of effort was

8    inconsistent with her verbal behavior and thought processes which were clear and rational.  (Id.

9    at 152.)  Plaintiff failed all attention and concentration tasks.  (Id. at 153.)  In taking both the Rey

10   15-item memory test and the nonverbal intelligence test, plaintiff's scores were so low that Dr.

11   Richwerger found they were either not valid or consistent with a low level of effort, and that they

12   were not a true measure of her actual ability.  His diagnosis was to rule out malingering,

13   depressive disorder by history, and unclear GAF score.  Her prognosis was unclear.  (Id.)  Based

14   on her verbal skills, however, this practitioner thought plaintiff could do simple and repetitive

15   tasks, could maintain concentration, persistence, pace, and basic social functioning, and adapt to

16   the usual stresses of work.  (Id. at 154.)

17   The DDS psychiatrist, Dr. Tyl, opined on April 28, 2003 that plaintiff had

18   affective disorder and depression not otherwise specified which did not precisely satisfy the

19   diagnostic criteria.  (Tr. at 159, 162.)  She found plaintiff to be mildly restricted in daily activities

20   and difficulties in maintaining social functioning, moderately restricted in maintaining

21   concentration, persistence or pace, and there was insufficient evidence to determine episodes of

22   decompensation.  (Id. at 169.)  Plaintiff was found to be not significantly limited in the following

23   areas: remembering locations and work procedures, understanding, remembering, and carrying

24   _____

25   [6] Of these medications, the only ones related to plaintiff's mental health impairment are
     amitriptyline, which is prescribed for depression, and Temazepam which is prescribed for
26   insomnia.  www.pdrhealth.com.

out short and simple instructions, maintaining attention and concentration for extended periods, maintaining a regular schedule, attendance and punctuality, sustaining an ordinary routine without special supervision, working without distraction by others, making simple work-related decisions.  (Id. at 173.)  She was also not limited in the ability to complete a normal work day and work week without interruption, and interact appropriately with the public, coworkers, and supervisors.  (Id. at 174.)  Plaintiff was moderately limited only in the ability to understand, remember, and carry out detailed instructions.  (Id. at 174.)

The ALJ then gave specific and legitimate reasons in rejecting the other psychological records.  Plaintiff does not expressly raise the "treating physician" rule, indeed even if there is a treating physician, but the court will discuss it here.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[7]  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester , 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may

---

[7]   The regulations differentiate between opinions from "acceptable medical sources" and "other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific regulations exist  for weighing opinions from "other sources."  Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

1    be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating

2    professional's opinion generally is accorded superior weight, if it is contradicted by a supported

3    examining professional's opinion (supported by different independent clinical findings), the ALJ

4    may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

5    Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

6    weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

7    2001),[8] except that the ALJ in any event need not give it any weight if it is conclusory and

8    supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999)

9    (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes,

10   881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

11   insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

12            Here, the ALJ discussed at length his reasons for his findings regarding plaintiff's

13   mental health which included support in the record for a depressive disorder which he accepted,

14   but that the record did not support a finding of PTSD and/or anxiety disorder which would be

15   expected to continue for a continuous twelve month period.  The ALJ also explained that the

16   record indicated no psychological counseling (except for possible medications) prior to

17   November, 2003, although plaintiff's claimed onset date was November 1, 1996 and her

18   application was filed on September 24, 2002.  (Tr. at 18.)  Furthermore, the ALJ noted that

19   plaintiff did not complain of any psychological problems, such as nightmares, hallucinations, or

20   suicidal ideations prior to November, 2003.  Additionally, the most recent treatment records

21   indicated improvement with medications.  The ALJ went on to refer to his credibility analysis

22   which was thoroughly analyzed elsewhere in the findings, wherein Dr. Richwerger was noted to

23   believe plaintiff was malingering and thought her test score invalid due to low effort, and

24

_____

25         [8]  The factors include: (1) length of the treatment relationship; (2) frequency of
     examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
26   (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1    plaintiff's inconsistent statements throughout the record regarding her education and work

2    experience were discussed.  (Tr. at 11, 17, 18-19.)  Based on this significant lack of credibility,

3    the ALJ thought plaintiff's recent mental health records were not reliable in recording a

4    worsening of her psychiatric symptoms.[9]  The ALJ also referred to other treating records which

5    indicate that plaintiff can do simple unskilled work.  (Id. at 18.)

6           The ALJ properly considered all psychological treatment records.  The

7    Sacramento County Division of Mental Health diagnosed plaintiff with anxiety disorder NOS.

8    GAF was 68.[10]  (Tr. at 140.)  The plan recommended only simple changes such as decreasing

9    anxiety symptoms and increasing social support, as well as exploring job options.  Plaintiff was

10   not referred to a psychiatrist, was not prescribed medication, and was not recommended for

11   further testing or treatment other than to a support group.  (Id.)

12          Plaintiff did not actually follow through and begin treatment until November,

13   2003, when she began treatment with Dr. Xiao.  Therefore, plaintiff first obtained psychiatric

14   treatment well over a year after she applied for disability benefits.  Furthermore, medications

15   appear to have improved her problems.  (Tr. at 221, 222.)  Finally and most importantly, based

16   on clear evidence of malingering and credibility problems, the ALJ was entitled to dismiss

17   plaintiff's subjective complaints of mental problems as reported to various treating sources and

18   rely on those reports which indicated her true mental state.

19          Plaintiff bears the burden of proving she suffers from a physical or mental

20   impairment that makes her unable to perform "past relevant work."  Andrews v. Shalala, 53 F.3d

21   1035, 1040 (9th Cir.1995).  Plaintiff cannot merely show she is incapable of performing the

22

23          [9]  It is noteworthy that plaintiff does not contest the ALJ's finding that plaintiff is not
     credible.

24

25          [10]  According to the DSM IV, a GAF of 61-70 indicates "some mild symptoms (e.g.,
     depressed mood and mild insomnia) or some difficulty in social, occupational, or school
     functioning (e.g., occasional truancy, or theft within the household), but generally functioning
26   pretty well, has some meaningful interpersonal relationships."  DSM IV at 32.

                                                    9

1   particular job she once did; she must prove she cannot return to the same type of work.  <u>Villa v.</u>

2   <u>Heckler</u>, 797 F.2d 794, 798 (9th Cir.1986).  In determining whether a disability applicant can

3   perform past work, the Commissioner may consider work as it was actually performed, or as it is

4   normally performed in the national economy.  The ALJ determines the demands of a past job and

5   compares the demands to current RFC.  <u>Villa</u>, 797 F.2d at 798.

6            The ALJ found that plaintiff could do her past work or other medium unskilled

7   work with only the limitation that it be simple, unskilled entry level work, and that such

8   limitation did not erode the occupation base.  These findings were based on the properly relied

9   upon records of Drs. Richwerger and the DDS psychiatrist, Dr. Tyl.  It was not necessary for the

10  Commissioner to call a vocational expert because the production burden never shifted to the

11  Commissioner.  <u>See</u> <u>Miller v. Heckler</u>, 770 F.2d 845, 850 (9th Cir.1985).

12           Furthermore, the ALJ may consider the testimony of a vocational expert to

13  determine if plaintiff can do her past relevant work; however, the ALJ is not required to call such

14  an expert at the fourth step.  <u>Matthews v. Shalala</u>, 10 F.3d 678, 681 (9th Cir. 1993).  <u>See also</u>

15  <u>Crane v. Shalala</u>, 76 F.3d 251, 255 (9th Cir. 1996) (since ALJ found plaintiff could do his past

16  work at step four, there was no need to call a vocational expert for step five).

17           This circuit has held that only if a nonexertional impairment is significant enough

18  to limit plaintiff's work *in a certain category* must the ALJ resort to a vocational expert.

19  <u>Perimeter v. Heckler</u>, 765 F.2d 870, 872 (9th Cir. 1985) (finding lack of evidence of ability to

20  perform specific jobs; <u>Blackall v. Heckler</u>, 721 F.2d 1179, 1181 (9th Cir. 1983)).  <u>See also</u> <u>Ode</u>

21  <u>v. Heckler</u>, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional abilities in

22  order to depart from the grids).

23           In this case, the ALJ properly found that plaintiff's past work as sewing machine

24  operator is categorized as light work which was simple in nature.  <u>See</u> Dictionary of

25  \\\\\

26  \\\\\

10

Occupational Titles 786.685-030 (4th ed. 1991).[11]  Plaintiff's nonexertional limitation did not

significantly erode the occupational base, and the analysis properly ends at step four.

Consequently, a vocational expert was not required.  Plaintiff has also failed to show that she

could not return to her past job, and therefore the burden of proof remained with her.

Even if the analysis were to continue to step five in regard to whether plaintiff

could do other work, it was proper for the ALJ to rely on the grids rather than call a vocational

expert.

The Guidelines in table form ("grids") are combinations of residual functional

capacity, age, education, and work experience.  At the fifth step of the sequential analysis, the

grids determine if other work is available.  See generally Desrosiers v. Secretary of Health and

Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

The grids may be used if a claimant has both exertional and nonexertional

limitations, so long as the nonexertional limitations do not significantly impact the exertional

capabilities.[12]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other

grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc).  The ALJ, however, is not

automatically required to deviate from the grids whenever plaintiff has alleged a nonexertional

---

[11]  The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991), ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements.  It is used by the SSA to classify jobs as skilled, unskilled, or semiskilled.  (Id.)  Each job is assigned a number reflecting how long it generally takes to learn the job, termed "specific vocational preparation" ("SVP") time.  (Id.)

[12]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary; Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).  Non-exertional activities include mental, sensory, postural, manipulative and environmental matters which do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; Cooper, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993).

1   limitation.  Desrosiers, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged

2   does not automatically preclude application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, §

3   200.00(e)(2) (1996).  The ALJ must weigh the evidence with respect to work experience,

4   education, and psychological and physical impairments to determine whether a nonexertional

5   limitation significantly limits plaintiff's ability to work in a certain category.  Desrosiers 846

6   F.2d at 578 (Pregerson, J., concurring).  "A non-exertional impairment, if sufficiently severe,

7   may limit the claimant's functional capacity in ways not contemplated by the guidelines.  In such

8   a case, the guidelines would be inapplicable."  Desrosiers, 846 F.2d at 577-78.  The ALJ is then

9   required to use a vocational expert.  Aukland v. Massanari, 257 F.3d 1033 (9th Cir. 2001).

10          For the reasons stated above in support of the finding that plaintiff's mental

11  impairment did not significantly limit her abilities, reliance on the Rule 203.25 of the grids for

12  the determination that plaintiff is not disabled was appropriate.

13  CONCLUSION

14          Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment or

15  Remand is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED,

16  and the Clerk is directed to enter Judgment for the Commissioner.

17  DATED: 2/6/06

18

19                                          /s/ Gregory G. Hollows

20                                          _____
                                            GREGORY G. HOLLOWS
                                            U.S. MAGISTRATE JUDGE
21  GGH/076
    Her2685.ss.wpd

22

23

24

25

26